**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | |
| Plaintiff, | |
| and | Case No. 23-2439-KHV-BGS |
| AREEJ SAIFAN, | |
| Intervenor Plaintiff, | |
| v. | |
| CHIPOTLE SERVICES, LLC, | |
| Defendant. | |

**ORDER GRANTING MOTION TO COMPEL**

This matter comes before the Court on the Motion to Compel filed by Defendant Chipotle Services, LLC ("Defendant") seeking an Order compelling Intervenor Plaintiff Areej Saifan ("Intervenor") to produce text messages between Intervenor, her attorney Amy Coopman ("Coopman"), and third party Moussa Elbayoumy ("Elbayoumy"). (Doc. 102.) Intervenor opposes the motion arguing various procedural defects by Defendant and that the messages are attorney-client privileged, subject to the common interest doctrine, and/or subject to work product protection. (*See generally* Doc. 103.) For the reasons stated herein, Defendant's motion is **GRANTED**.

**FACTUAL BACKGROUND**

**I.      General Factual Background.**

This is an employment discrimination case in which Plaintiff EEOC and Intervenor allege that Defendant violated Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act

1

of 1991 by unlawfully harassing Intervenor based on her religion (Muslim).  (*See* Docs. 1, 10.)  The lawsuit was timely filed by Plaintiff EEOC on September 27, 2023 (Doc. 1), with Intervenor promptly filing her federal court Complaint on November 30, 2023 (Doc. 10).

More specifically, Intervenor contends that "[i]n observance of her Islamic faith, … [she] … wears a hijab and did so throughout her employment" with Defendant.  (Doc. 10, at 4.)  Intervenor continues that the unlawful employment practices at issue include her being "subject[ed] … to a barrage of harassing conduct based on her religion by her supervisor" Kevin Garcia, including "incessant requests [by Garcia] to see [her] hair … ." (*Id.*)  Intervenor states that she "immediately rebuffed Garcia's requests and explained that she wore the hijab because of her religious beliefs and could not remove it."  (*Id.*, at 5.)  She continues that she "told Garcia his requests to see her hair were inappropriate for the workplace and that removing her hijab would be akin to removing her clothing and exposing her body."  (*Id.*)  According to Intervenor, Garcia's behavior "culminated in [him] grabbing and partially removing her hijab, exposing her hair."  (*Id.*, at 4.)

Intervenor claims that this harassment, coupled with Defendant's alleged inaction, caused her to be constructively discharged from her employment.  (*Id.*, at 9-10.)  Finally, Intervenor alleges that Defendant retaliated against her by "refusing to schedule her for additional shifts unless she was willing to work at a different location, while allowing her harasser to continue working at the same location."  (*Id.*, at 11.)

Defendant generally denies that it harassed, discriminated against, or retaliated against Intervenor.  (*See generally* Doc. 33.)  Defendant further alleges that Intervenor was not constructively discharged.  (*Id.*)

## II.    Discovery at Issue.

The present motion seeks what Defendant describes as "pre-litigation group text messages" between Intervenor, her attorney Coopman, and third-party, non-attorney Elbayoumy.  (*See* Doc. 1,

at 1.)  The text messages, which have been provided to the Court for *in camera* review, occurred from

August 16, 2021, to May 14, 2022 – some 16-25 months before the present lawsuit was initiated by

the EEOC.  (*See* Doc. 102-4.)

Defendant asserts that Elbayoumy "has been deeply and personally involved in this case"

from its inception.  (*Id.*, at 2.)  According to Defendant,

> [o]n August 12, 2021, three days after … Garcia … allegedly touched
> [Intervenor's] hijab, [Intervenor] contacted Elbayoumy, seeking his
> guidance and help from The Council on American-Islamic Relations,
> Kansas Chapter ("CAIR-Kansas").   Elbayoumy is a friend of
> [Intervenor's] family and has served as an unpaid volunteer for CAIR-
> Kansas since 2014.

(*Id.*)

Intervenor identifies Elbayoumy as "Chair" of CAIR Kansas, an organization that "provides

guidance and toolkits regarding the pillars of Islam (Islamic religious practices) and civil rights."

(Doc. 103, at 3.)  She indicates that there is "no dispute that Dr. Elbayoumy introduced [her] to her

undersigned counsel," Coopman.  (*Id.*)  Intervenor continues that Coopman has represented her in

> three legal matters arising from the scarf-grabbing incident: (1) the
> Lenexa, Kansas criminal battery police report and charge against the
> Assistant Manager that was filed within days of the scarf-grabbing
> incident (for which [Intervenor's] counsel was paid on an hourly basis
> by CAIR Kansas); (2) the EEOC administrative proceeding and
> conciliation process arising from [Intervenor's] charge of religious
> discrimination, harassment and retaliation; and (3) the instant lawsuit.

(*Id.*)  Elbayoumy's involvement with Intervenor and this case is highlighted by his inclusion in the

Rule 26 initial disclosures submitted by Intervenor and Plaintiff EEOC on January 8, 2024, in which

Elbayoumy was identified as a fact witness who "is likely to have information regarding the

allegations in the EEOC's Complaint for Damages, the pillars of Islam, and [Intervenor's] emotional

distress damages." (Doc. 102-6, at 3.)

Defendant's First Requests for Production of Documents were served on Intervenor on

December 18, 2023.  (Doc. 102-5.)  Therein, Defendant sought communications between

Intervenor and the Council on American–Islamic Relations (CAIR), "including, but not limited to, electronic communications, letters, social media messages, and text messages" as well as communications between Intervenor and "(a) any individuals you have identified in response to Defendant Chipotle Services, LLC's First Interrogatories to Plaintiff or (b) any other employee or agent of Chipotle, which relate to her employment with Chipotle, including, but not limited to, electronic communications, letters, social media messages, and text messages." (*Id.*) Intervenor objected to these discovery requests on January 17, 2024, on the basis of the common interest privilege, the attorney-client privilege, and the work product doctrine. (*Id.*) Intervenor did not, however, indicate in her discovery responses that documents were being withheld on these bases, nor did she produce a privilege log at that time. (*Id.*)

Defendant contends it did not learn of the existence of documents responsive to these discovery requests (the aforementioned group text conversations between Intervenor, Elbayoumy, and Coopman) or that such documents had been withheld from production until Elbayoumy's deposition on June 3, 2024 – almost five months after Intervenor's discovery responses were served. (Doc. 102, at 4.) According to Defendant, at the June 3 deposition,

> Coopman objected to producing these communications on the grounds that Elbayoumy was a consulting expert – information that had not been disclosed previously."[1] … To that point, Coopman admitted that she had neglected to provide the requisite privilege log. (*Id.*) As to Elbayoumy's expert status, he admitted he had not been paid by [Intervenor] or Coopman to be a consulting expert and no written agreement for expert services existed.[2] On June 23, 2024, Intervenor produced her first privilege log identifying 45 separate text communications that span several months.[3]

(*Id.*)

In opposition to Defendant's motion, Intervenor contends that she shares a common

---

[1] Doc. 102, at 4 (citing Doc. 102-2, Elbayoumy's Depo, 128:5-8).
[2] *Id.* (citing Doc. 102-2, Elbayoumy's Depo, 129:12–13, 130:5–8).
[3] Doc. 102-4 (Intervenor's Privilege Log).

interest in the outcome of this litigation with Elbayoumy, which creates an exception to any potential waiver of the attorney-client privilege that would have otherwise occurred by sharing these communications with a third-party such as Elbayoumy.  (Doc. 103, at 3-4.)  She continues that "[e]ven if the attorney-client privilege failed to protect the communications between [Intervenor], her counsel and Dr. Elbayoumy, the communications are still protected from discovery under the work-product doctrine."  (Id., at 4.)

According to Defendant, in an effort to "shield from disclosure" these group text messages, Intervenor identified Elbayoumy as a consulting expert "at the eleventh hour," despite having identified Elbayoumy as a fact witness in Intervenor's initial disclosures.  (Doc. 102, at 1.)  Defendant continues that

> [t]his new designation did not come to light until Intervenor advised –
> also at the eleventh hour – that she was withholding otherwise
> responsive documents based on the attorney-client privilege and work
> product doctrine – legal protections that require Elbayoumy to be an
> expert of some kind, lest his participation in these electronic
> communications destroy the asserted protections.  Nearly six months
> elapsed between [Intervenor's] pertinent discovery responses and her
> recent disclosure of withheld documents and the identification of the
> grounds for their withholding, including Elbayoumy's expert status.
> This unjustified delay – and the prejudice to Defendant that resulted –
> are textbook grounds for waiver.

(Id., at 1-2.)  Defendant contends that Elbayoumy cannot be considered an expert because he "has not been paid for his purported expert services nor is there an agreement setting forth the terms or scope of his services."  (Id., at 2.)  Thus, Defendant asserts, Elbayoumy "is exactly what he appears to be – a fact witness."  (Id.)

## Legal Analysis

### I. Procedural Issues.

Prior to addressing the parties' substantive arguments, the Court will address the procedural issues raised in the parties' briefing.  These issues relate to the duty to confer, the timeliness of

Defendant's motion, and Intervenor's failure to identify that otherwise responsive documents were being withheld and failure to provide a privilege log at the time she raised objections to the discovery requests at issue.

### A.     The Duty to Confer.

Intervenor argues that Defendant's motion fails to comply with Fed. R. Civ. P. 37(a)(1) and D. Kan. Rule 37.2, which require an attorney to confer with opposing counsel prior to filing a discovery-related motion.  (Doc. 103, at 1-2.)  A motion to compel "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."  Fed. R. Civ. P. 37(a)(1). District of Kansas Local Rules further state that a court "will not entertain any motion to resolve a discovery dispute" unless a reasonable effort has been made to confer regarding the motion's underlying issue(s) prior to the filing of the motion.  D. Kan. Rule 37.2.  The Local Rules require the certification to describe with particularity the steps taken by all counsel to resolve the issue in dispute.  These requirements encourage parties to resolve discovery disputes "without judicial intervention." *Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 456, 459 (D. Kan. 1999). *See also VNA Plus, Inc. v. Apria Healthcare Grp., Inc.*, No. 98-2138-KHV, 1999 WL 386949, at *1 (D. Kan. June 8, 1999).

That stated, even assuming a moving party did not fulfill its duty to confer, the Court, in its discretion, may choose to determine a motion to compel on its merits under certain circumstances. *Cf. White v. Graceland Coll. Ctr. for Pro. Dev. & Lifelong Learning, Inc.*, No. 07-2319-CM, 2009 WL 722056, at *2 (D. Kan. Mar. 18, 2009) (holding that a court can consider the underlying issues when "the interests of justice are best served by taking up the motion [to compel] on its merits.").  The Court finds that as to the dispute presented herein, even if Defendant has not met its duty to confer, the interests of justice clearly weigh in favor of the relevant issues being analyzed on their

6

substantive merits.

In addition to the duty to confer concerning discovery disputes, the parties are also required to engage the Court in a pre-motion telephone conference before a discovery motion is filed. D. Kan. Rule 37.1(a). Local Rule 37.1(a) specifically provides:

> Before filing any disputed discovery-related motion, and after satisfying the duty to confer or to make a reasonable effort to confer in D. Kan. Rule 37.2, the party intending to file a discovery-related motion must contact the court to arrange a telephone conference with the judge and opposing counsel . . .**[u]nless otherwise requested by the court, no disputed discovery-related motion, material, or argument should be filed or submitted prior to this telephone conference**.

D. Kan. Rule. 37.1(a) (emphasis added). It is undisputed that the parties engaged in a pre-motion telephone conference with the Court – which lessens the impact of any purported failure by Defendant to confer with Intervenor prior to filing the present motion.

**B.     Timeliness of Defendant's Motion and Intervenor's Privilege Log.**

The District of Kansas also has local rules which address the timeliness of a motion to compel. Pursuant to D. Kan. Rule 37.1(c):

> **Time for Filing Discovery-Related Motions**. Any discovery-related motion must be filed within 30 days of the default or service of the response, objection, or disclosure that is the subject of the motion, or, for all other disputes, within 30 days after the movant knew or reasonably should have known of the potential dispute. The court may deny any motion filed after that 30-day period as untimely unless the movant demonstrates diligence in attempting to resolve the specific discovery dispute at issue.

The purpose of the rule "is to ensure the court can address discovery disputes while they are still fresh, and in turn expedite litigation." *Hartford Fire Ins. Co. v. P & H Cattle Co.*, No. 05-2001-DJW, 2008 WL 5046345, at *1 (D. Kan. Nov. 24, 2008) (citing *Continental Cas. Co. v. Multiservice Corp.*, No. 06-2256-CM, 2008 WL 73345, at *4 (D. Kan. Jan. 7, 2008)). The 30-day rule in D. Kan. 37.1(c) is also intended to promote the timely and efficient completion of discovery. *See* Fed. R. Civ. P. 1.

7

Supplemental production may serve as a new "triggering event" for the running of the 30-day deadline to file a motion to compel. *Neonatal Prod. Grp., Inc., v. Shields*, No. 13-2601-DDC, 2015 WL 7078796, at *2-3 (D. Kan. Nov. 13, 2015). *See also No Spill, LLC v. Scepter Canada, Inc.*, No. 2:18-CV-2681-HLT-KGG, 2021 WL 5906042, at *3 (D. Kan. Dec. 14, 2021) (ruling that supplemental production served as a new triggering event).

When a discovery motion is filed after the time allowed by D. Kan. Rule 37.1(c), the Court may determine if there is "excusable neglect" for the untimely filing. *See, e.g.*, *No Spill*, 2021 WL 5906042, at *4-5 (finding excusable neglect present when party did not file its motion to compel within the time prescribed by Local Rule). To do so, the Court considers the following factors: "(1) whether the movant acted in good faith; (2) reason for the delay, including whether it was within the reasonable control of the movant; (3) danger of prejudice to the nonmoving party; and (4) length of the delay and its potential impact on judicial proceedings." *Grider v. Shawnee Mission Med. Ctr., Inc.*, No. 16-2750-DDC-GLR, 2018 WL 2225011, at *2 (D. Kan. May 15, 2018) (internal citation omitted).

Intervenor argues the present motion is untimely pursuant to D. Kan. Rule 37.1(c) because Defendant failed to raise issues relating to the attorney-client privilege and work product protection when her discovery responses were served on January 17, 2024. (Doc. 103, at 2 (citing Doc. 27).) According to Intervenor, "Defendant's motion to compel would have been timely in February 2024, not July" and "Defendant has not demonstrated diligence in the intervening months." (Doc. 103, at 2.)

The Court is not persuaded by Intervenor's argument and finds that Defendant's motion was timely. As argued by Defendant, Intervenor waived the attorney-client and work product protections by "failing to produce her privilege log in a timely manner without justification and failing to produce a privilege log that is sufficiently detailed to determine whether the claimed

protections even apply." (Doc. 102, at 5.) Intervenor also failed in her discovery responses to even indicate that otherwise responsive documents were being withheld on the basis of privilege or protection.

Fed. R. Civ. P. 26(b)(5) sets forth the requirement that a party withholding otherwise discoverable information on the basis of privilege or protection to expressly make the claims and describe the documents or communication being withheld in a manner that "will enable other parties to assess the claim" of privilege and/or protection – in other words, providing a privilege log. "The objecting party must provide enough information in the privilege log to enable the withholding party, and the Court, to assess each element of the asserted privilege and determine its applicability." *Leftwich v. City of Pittsburg, Kansas*, No. 16-2112-JWL-GLR, 2017 WL 1338838, at *2 (D. Kan. April 12, 2017) (citing *BridgeBuilder Tax + Legal Servs., P.A. v. Torus Specialty Ins. Co.*, No. 16-2236-JWL-GEB, 2017 WL 914809, at *4 (D. Kan. Mar. 8, 2017) (citations omitted)). A privilege log is also required when objections are raised as to work product protection. *See Progressive Northwestern Ins. Co. v. Gant*, No. 15-9267-JAR-KGG, 2017 WL 3530842, *6 (D. Kan. Aug. 16, 2017).

If a party fails to produce a privilege log or provides one that is inadequate, the privilege may be deemed waived. *Sprint Comm'cns Co. L.P. v. Big River Telephone Co., LLC*, No. 08-2046-JWL, 2009 WL 2878446, at *1 (D. Kan. Sept. 2, 2009). *See also In re Universal Service Fund Telephone Billing Practices Litigation*, 232 F.R.D. 669, 671 (D. Kan. 2005). However, "'courts often reserve such a penalty for those cases where the offending party unjustifiably delayed in responding to the discovery requests or acted in bad faith.'" *Sprint Comm'cns Co. L.P.*, at *1 (citation omitted).

Defendant argues that the "undisputed facts" presented establish that Intervenor failed to "timely notify" Defendant "documents were being withheld" on the basis of privilege. (*See* Doc. 102-6, wherein Intervenor objected to the discovery requests at issue, raised the issues of attorney client privilige, the common interest privilege, and work-product protection, but did not indicate any

documents were being withheld on the basis of these privileges/protections.)  Defendant continues that

> it is apparent that Intervenor had no intention of providing a privilege log until Defendant learned about the withheld group texts during Elbayoumy's deposition [on June 3, 2024].  Only then was [Intervenor] prompted to produce a privilege log, which itself, took another twenty days to produce – and only after the close of discovery.  In total, Defendant was kept in the dark about these communications for over five months. There is no justification for this delay.

(Doc. 102, at 5.)  *Sprint Communications Co., L.P. v. Vonage Holdings Corp.*, 2007 WL 1347754 at *2 (D. Kan. 2007) ("Acknowledging the harshness of a waiver sanction, however, courts have reserved such a penalty for only those cases where the offending party committed unjustified delay in responding to discovery.").  The Court agrees.  Elbayoumy's deposition testimony is akin to a supplemental production that would serve as a new "triggering event" for the running of the 30-day deadline to file a motion to compel.  *Cf. Neonatal Prod. Grp., Inc.*, 2015 WL 7078796, at *2-3; *No Spill, LLC*, 2021 WL 5906042, at *3 (D. Kan. Dec. 14, 2021) (ruling that supplemental production served as a new triggering event).

Intervenor's response brief glosses over these issues, but instead attempts to place the onus on Defendant for not filing the present motion within 30 days of her January 2024 discovery responses.  (*See* Doc. 103, at 2.)  The Court is unpersuaded by Intervenor's untimeliness argument. It was valid for Defendant to assume no responsive documents were withheld when Intervenor chose not to identify the documents in her discovery response and did not include them in a timely privilege log as required by Federal Rule 26.  While it may have been appropriate for Defendant to inquire as to whether responsive documents were being withheld based on the language of Intervenor's discovery response, the Court finds this is not dispositive of issue here   Defendant's motion was timely filed once Intervenor made it aware of existence of the withheld documents. Intervenor waived the privileges and protections that may have otherwise attached to these

documents by failing to timely indicate that documents were being withheld and timely produce a privilege log when the discovery responses were made in January 2024.  Intervenor has not even attempted to provide justification for this delay.

Even assuming there was no waiver of the privileges and protections alleged by Intervenor, as discussed below, the Court finds that such privileges and protections are largely inapplicable to the information at issue in this motion.  The Court will address the applicability of the attorney-client privilege, the common interest privilege, and the work product doctrine in turn.

## II.   Substantive Analysis.

Fed. R. Civ. P. 26(b) states that

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at state in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within this scope of discovery need not be admissible in evidence to be discoverable.

The requested information must therefore be nonprivileged, relevant, and proportional to the needs of the case to be discoverable.  *Holick v. Burkhart*, No. 16-1188-JTM-KGG, 2018 WL 372440, at *2 (D. Kan. Jan. 11, 2018).

Discovery requests must be relevant on their face.  *Williams v. Bd. of County Comm'rs*, 192 F.R.D. 698, 705 (D. Kan. 2000).  Once the low burden of relevance has been established, the legal burden regarding the defense of a motion to compel resides with the party opposing the discovery request.  *See Swackhammer v. Sprint Corp. PCS*, 225 F.R.D. 658, 661–62, 666 (D. Kan. 2004).  Thus, "the objecting party must specifically show in its response to the motion to compel, despite the broad and liberal construction afforded by the federal discovery rules, how each request for

11

production or interrogatory is objectionable." *Sonnino v. Univ. of Kansas. Hosp. Auth.*, 221 F.R.D. 661, 670–71 (D. Kan. 2004).

As discussed above, Defendant requests the Court enter an Order compelling Intervenor to produce the group texts between Intervenor, Coopman, and Elbayoumy. (*See generally* Doc. 102.) Intervenor opposes the motion, opining that the communications sought by Defendant are shielded from production by the common interest doctrine, the attorney-client privilege, and/or work product doctrine. (*See generally* Doc. 103.) According to Defendant, however, "the attorney-client privilege was waived once Elbayoumy was granted access to communications involving Coopman and Intervenor." (*See* Doc. 102, at 10.) Defendant continues that the work product doctrine does not apply because Elbayoumy is not a consulting expert, but rather, at best, a hybrid fact witness. (*Id.*) Therefore, according to Defendant, the group texts are not protected. As discussed above, although the Court has already determined that Intervenor has waived whatever privileges and/or protections would otherwise apply to the text messages at issue because of Intervenor's procedural failures, the Court will discuss these substantive objections in turn.

### A.     Attorney-Client Privilege.

Federal law provides an attorney-client privilege for communications between an attorney and client. *See Heglet v. City of Hays*, No. 13-2228-KHV-KGG, 2014 WL 1094458, at *2 (D. Kan. Mar. 19, 2014). The party asserting the privilege has the burden of establishing its applicability. *New Jersey v. Sprint Corp.*, 258 F.R.D. 421, 426 (D. Kan. 2009). The essential elements of the attorney-client privilege are: (1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except if the protection is waived. *Marten v. Yellow Freight Sys., Inc.*, No. 96-2013-GTV, 1998 WL 13244, *5 (D. Kan. Jan. 6, 1998).

> The privilege 'protects confidential communications by a client to an
> attorney made in order to obtain legal assistance from the attorney in
> his capacity as a legal advisor.' The privilege also protects advice given
> by the lawyer in the course of representing the client. The privilege
> protects communications with in-house counsel as well as outside
> attorneys. The privilege, however, 'is to be extended no more broadly
> than necessary to effectuate its purpose.'

*New Jersey*, 258 F.R.D. at 425 (citations omitted).

The importance of the attorney-client privilege in American jurisprudence is well-established.

*See Cincinnati Ins. Co. v. M.S. ex rel. Serrano*, No. 11–2075–JAR/KGG, 2011 WL 6304086, at *6 (D.

Kan. Dec. 16, 2011) (citing *Milavetz, Gallop & Milavetz, P.A. v. U.S.*, 130 S. Ct. 1324, at n.5 (2010)

(holding that the attorney-client privilege is an important "means of protecting that relationship and

fostering robust discussion" between a party and its counsel)). As such, waivers of the privilege are

to be narrowly construed. *Id.*

Simply stated, the text messages at issue are not protected by the attorney-client privilege

because the essential element of being made "in confidence" is not present. *See Marten*, 1998 WL

13244, at *5. The text messages between Intervenor and her attorney Coopman were not made in

confidence with Elbayoumy included in the text chain. The Court **overrules** Intervenor's attorney-

client privilege objection.

Intervenor concedes that "the addition of a third party to a communication between

attorney and client normally waives the privilege that would otherwise attach" but argues that "the

common-interest doctrine is an exception to waiver that may protect information and documents

shared outside of the attorney-client relationship." (Doc. 103, at 3 (citations omitted).) The Court

thus addresses the applicability of the common interest doctrine.

### B.    Common Interest Doctrine.

The common interest doctrine "affords two parties with a common legal interest a safe

harbor where they can openly share privileged information" without risking the waiver of the

privilege.  *U.S. Fire Ins. Co. v. Bunge N. Am. Inc.*, No. 05-2192-JWL-DJW, 2006 WL 3715927, at *1 (D. Kan. Dec. 12, 2006) (citing *Sawyer v. Southwest Airlines*, No. 01-2385-KHV, 2002 WL 31928442, at *3 (D. Kan. Dec. 23, 2002)).  The common interest doctrine "normally operates as a shield to preclude waiver of the attorney-client privilege when a disclosure of confidential information is made to a third party who shares a community of interest with the represented party."  *Frontier Ref. v. Gorman-Rupp Co.*, 136 F.3d 695, 705 (10th Cir. 1998).

"'A community of interest exists where different persons or entities have an identical legal interest with respect to the subject matter of a communication between an attorney and a client concerning legal advice … .  The key consideration is that the **nature of the interest be identical, not similar**.'"  *Id.* (emphasis added) (citation omitted).  The Tenth Circuit has also applied the "identical" legal interest standard in analyzing whether a shared common interest excuses waiver of a privilege.  *KPH Healthcare Servs. v. Mylan*, N.V., No. 2:20-CV-02065-DDC-TJJ, 2022 WL 3594584, at *7 (D. Kan., Aug. 23, 2022); *see Frontier Ref.*, 136 F.3d 695.

Intervenor contends that she shares a common interest in the outcome of this litigation with Elbayoumy because, in his role as Chair of CAIR-Kansas, he and Intervenor engaged in a "joint effort … to hold the Assistant Manager and Chipotle accountable for their violations of Islamic religious practices generally and [Intervenor's] rights specifically within the civil and criminal justice systems."  (*Id.*, at 3-4.)  The Court is not persuaded by this argument.  Intervenor has not established that her interest in this litigation is <u>identical</u> rather than merely <u>similar</u> to that of Elbayoumy.  *See Frontier Ref.*, 136 F.3d at 705.  Relevant, though not conclusive, to this analysis is the fact that Elbayoumy is not a party to this case.  *See United States ex rel. Schroeder v. Medtronic, Inc.*, Case No. 17-2060-DDC-KGG, 2023 WL 4864983, *5 (D. Kan. July 31, 2023) (holding that no common interest existed when the third-party at issue was not a participant in the litigation and the party litigant did not identify any "common legal purpose" he and the third-party agreed on prior to the

14

communication).

The Court finds that Elbayoumy has an institutional or societal interest in the outcome of this litigation, rather than the personal interest Intervenor has. As Defendant contends in its reply brief, Elbayoumy's "desire to see [Intervenor] succeed, which is based on likely shared sociopolitical beliefs, is not the same thing as a legal interest." (Doc. 108, at 3.) While their interests are arguably similar, Elbayoumy's interest is clearly not identical to that of Intervenor. In addition, no evidence has been presented that Intervenor and Elbayoumy had agreed on a common legal purpose prior to these communications that included Intervenor's attorney. *Schroeder*, 2023 WL 4864983, at *5.

All things considered, Intervenor has failed to establish that, in the present situation, the common interest doctrine precludes a waiver of any attorney-client privilege that would otherwise attach to these text messages. Intervenor's common interest doctrine objection is **overruled**.

### C.    The Work Product Doctrine.

Intervenor next argues that even if the attorney-client privilege and common interest doctrine do not apply to the text messages at issue, the work product doctrine would protect these communications from production. (Doc. 103, at 4.) The work-product doctrine is memorialized by Fed. R. Civ. P. 26(b)(3), which provides that a party ordinarily "may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)."

> To establish work product protection, the party seeking to invoke work product immunity must show that (1) the materials sought to be protected are documents or tangible things; (2) they were prepared in anticipation of litigation or for trial; and (3) they were prepared by or for a party or a representative of that party. The party invoking work product immunity for a document has the burden to establish all the elements of the immunity, and a mere allegation that the work product privilege applies is insufficient to prove applicability.

*McNabb v. City of Overland Park*, No. 12-2331-CM-TJJ, 2014 WL 1152958, at *8 (D.Kan. March 21, 2014) (citations omitted).  *See also AKH Co., Inc. v. Universal Underwriters Ins. Co.*, 300 F.R.D. 684, 688 (D. Kan. 2014).

"[T]he work product doctrine requires more than a mere possibility of litigation."  *Pouncil v. Branch Law Firm*, No. 10-1314-JTM-DJW, 2011 WL 5025033, *4 (D.Kan. Oct. 21, 2011).  Rather, the party relying on the protection must support, by evidentiary showing, that the "purpose of preparing the document" was "in the course of adversarial litigation or in anticipation of a <u>threat of adversarial litigation that was real and imminent</u> … ."  *Leftwich*, 2017 WL 1338838, at *2 (emphasis added) (citing *BridgeBuilder Tax + Legal Servs., P.A.*, 2017 WL 914809, at *4 (citations omitted)).  *See also No Spill, LLC*, 2021 WL 5906042, at *5.  Like the attorney-client privilege, the party asserting work-product protection must make a "clear showing" that it applies.  *U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, 247 F.R.D. 656, 658 (D. Kan. 2007).

Intervenor argues that disclosure to a non-adversarial party typically does not constitute a waiver of work-product protection.  (Doc. 103, at 4-5.)  *See Pipeline Prod., Inc. v. Madison Cos, LLC*, No. 15-4890-KHV-ADM, 2019 WL 21106111, *3 (D. Kan. May 14, 2019) (drawing a distinction between the waiver of the attorney-client privilege by sharing a communication with any nonparty as opposed to a waiver of the work product doctrine, which does not necessarily occur by sharing with a non-adversarial nonparty).  Intervenor asserts that Elbayoumy "is precisely the kind of third party for whom work-product protection has not been waived" because he has "served as an outside consultant [to Intervenor and her counsel] providing advice and professional services relating to injunctive and equitable relief sought against the defendants in all three legal matters."  (Doc. 103, at 5.)

Defendant criticizes Intervenor's "conclusory allegations that Elbayoumy served" as a consulting expert while pointing out that Intervenor has failed to cite anything "in the record to

support her belated argument that Elbayoumy is a consulting expert whose communications qualify for work product protections." (Doc. 108, at 3.) Granted, in her initial disclosures, Intervenor identifies Elbayoumy as a fact witness, someone "likely to have information regarding the allegations in this action, the pillars of Islam, and [Intervenor's] emotional distress damages" (Doc. 102-6, at 3.) Defendant argues that "[n]one of this suggests Elbayoumy as an expert witness of any kind." (Doc. 102, at 3.)

While the Court sympathizes with Defendant's frustration at the change in how Elbayoumy's status has been classified by Intervenor, the fact remains that there is no duty to disclose nonretained, consulting experts. Nonretained consulting experts are individuals "who [have] been consulted in preparation for trial but [have] not been retained or specially employed in anticipation of litigation." O'Connor's Federal Rules * Civil Trials, Chapter 6.D. § 4.2 (2024 ed.) (citing *Ager v. Jane C. Stormont Hosp. & Training Sch. For Nurses*, 622 F.2d 496, 500-01 (10th Cir. 1980)) (remaining citation omitted). The Tenth Circuit has held that the status of each expert is to be determined on a case-by-case basis considering the following factors:

> (1) the manner in which the consultation was initiated; (2) the nature, type and extent of information or material provided to, or determined by, the expert in connection with his review; (3) the duration and intensity of the consultative relationship; and, (4) the terms of the consultation, if any (e. g. payment, confidentiality of test data or opinions, etc.). Of course, additional factors bearing on this determination may be examined if relevant.

*Ager*, 622 F.R.D. at 501. Information regarding informally consulted experts is not discoverable. *Id.*

Intervenor has, however, complicated this situation by listing Elbayoumy as a potential fact witness with discoverable information potentially relevant to Intervenor's allegations, "the pillars of Islam," and Intervenor's potential emotional distress damages. (Doc. 102-6, at 3.) This leads the Court to believe that Elbayoumy's status in this case is more than that of a mere nonretained consulting expert.

Intervenor next argues that she meets her burden to show that the communications sought were generated "in anticipation of litigation." (Doc. 103, at 5 (citation omitted).) She continues that "[t]he communications at the heart of this dispute were in anticipation of litigation and include legal advice related to interviews taking place in the days, weeks and months following the scarf-grabbing incident." (*Id.*) Having reviewed the text messages at issue, the Court cannot agree that they were "created" in anticipation of *this* litigation. They were, however, clearly related to the criminal litigation of the underlying charges brought against Garcia resulting from his alleged touching of Intervenor. As such, the Court potentially could find that the communications meet the definition of "work product" as documents prepared in anticipation of litigation or for trial by a party or a representative of that party.

That stated, it is unnecessary for the Court to make this determination. As discussed in Section I. B., *supra*, Intervenor waived any work product protection as to the documents at issue by failing to indicate that text messages existed, by failing to indicate the text messages were being withheld in response to Defendant's discovery requests, and by failing to timely produce privilege log listing the text messages. There is no indication in the parties' briefing of this motion that Intervenor had any intention of making Defendant aware of the subject text messages until Elbayoumy let the proverbial the cat out of the bag at his June 3rd deposition, which lead Defendant to promptly file the present motion. As such, Intervenor's work product objection is **overruled** and Defendant's motion is **GRANTED**.

## III. Conclusion.

To summarize, the Court finds that Intervenor waived any objections to producing the text messages at issue by failing to indicate that documents responsive to Defendant's discovery requests were being withheld and by failing to timely produce a privilege log. Although the present motion was not filed until approximately 5 months after the underlying discovery responses were served by

Intervenor, Elbayoumy's deposition testimony on June 3, 2024, which identified the text messages for the first time, triggered the 30 day deadline to file a motion to compel the documents.  The Court further finds that the attorney-client privilege and common interest doctrine do not apply to the documents at issue.  The documents were shared outside the attorney-client relationship and Elbayoumy and Intervenor do not have an identical, common interest in the outcome of this litigation.  To the extent the work product doctrine arguably may have protected the text messages from production, Intervenor waived any such objection as stated above.  Defendant's motion is **GRANTED**.  Intervenor shall produce the text messages in their entirety **on or before August 8, 2024**.

       **IT IS THEREFORE ORDERED** that Defendant's motion (Doc. 102) is **GRANTED**.

       **IT IS SO ORDERED.**

Dated August 1, 2024, at Wichita, Kansas.

/S/BROOKS G. SEVERSON
Brooks G. Severson
United States Magistrate Judge