UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>        Plaintiff,<br><br>and<br><br>AREEJ SAIFAN,<br><br>        Intervenor Plaintiff,<br><br>        v.<br><br>CHIPOTLE SERVICES, LLC,<br><br>        Defendant. | Case No. 23-2439-KHV-BGS |

**EEOC'S AND SAIFAN'S BRIEF IN OPPOSITION
TO DEFENDANT'S MOTION FOR PARTIAL RECONSIDERATION**

      The Court denied Defendant's motion for summary judgment on Plaintiffs' claims. Doc. 158. Chipotle now asks for reconsideration based on allegedly intervening law and because it alleges the Court clearly erred. Doc. 163. Much of the company's motion for reconsideration merely rehashes its summary judgment briefing and should be denied.

**Legal Standard**

      The Court has discretion whether to grant a motion to reconsider. *McCormick v. City of Lawrence, Kan.*, No. CIV.A. 03-2418KHV, 2006 WL 839456, at *1 (D. Kan. Mar. 29, 2006) (citing *Hancock v. City of Okla. City*, 857 F.2d 1394, 1395 (10th Cir.1988)). Under D. Kan. Rule 7.3, a motion to reconsider must be based on: "(1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error or prevent manifest injustice." Chipotle cannot use a motion to reconsider to rehash previously rejected arguments or

to offer new legal theories or facts. *Cline v. S. Star Cent. Gas Pipeline, Inc.*, 370 F. Supp. 2d 1130, 1132 (D. Kan. 2005), aff'd, 191 F. App'x 822 (10th Cir. 2006) (citing *Achey v. Linn County Bank*, 174 F.R.D. 489, 490 (D. Kan.1997)). And the company's "failure to present its strongest case in the first instance does not entitle it to a second chance in the form of a motion to reconsider." *Id*. (quoting *Sithon Mar. Co. v. Holiday Mansion*, 177 F.R.D. 504, 505 (D. Kan. 1998)).

Chipotle argues that intervening law and clear error necessitate reconsideration of the Court's Order. Doc. 163 at 4. But the company acknowledges that the Supreme Court decided *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024), before the Court's December 3, 2024 Order. *Muldrow* is not intervening. Plaintiffs address whether the Court clearly erred.

## Argument

**I.** ***Muldrow* clarified, rather than altered, the hostile work environment analysis, and the Court did not clearly err.**

The Court did not clearly err because *Muldrow* did not lower the standard for hostile work environment claims. Instead, *Muldrow* confirmed that harassment need not significantly alter the terms or conditions of employment to create a hostile work environment. Hence, the Court applied a clarified view of hostile work environment claims under *Muldrow*, not a lowered standard, and did not clearly err.

**A.  *Muldrow*'s reasoning applies to hostile work environment claims.**

Although *Muldrow* did not expressly address the severe or pervasive standard, its text-based reasoning should apply with equal force in the hostile work environment context. The hostile work environment theory derives from the same statutory provision that the Supreme Court construed in *Muldrow*—namely, 42 U.S.C. § 2000e-2(a)(1). *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002) ("[T]he phrase 'terms, conditions, or privileges of

2

employment' of 42 U.S.C. § 2000e-2(a)(1) evinces a congressional intent to strike at the entire spectrum of disparate treatment of men and women in employment, which includes requiring people to work in a discriminatorily hostile or abusive environment.") (internal citation omitted).

Insofar as the statutory text does not require "significance" for disparate treatment claims, *Muldrow*, 601 U.S. at 355, it is difficult to see how it could require that heightened showing for different types of claims flowing from the same language. As the Sixth Circuit recently held, "[b]ecause hostile-work-environment claims arise out of the same statutory language as disparate-treatment claims, *Muldrow*'s holding that Title VII does not require plaintiffs to show 'significant' harm applies to both types of claims." *McNeal v. City of Blue Ash*, 117 F.4th 887, 904 (6th Cir. 2024). Thus, the Court did not clearly err by viewing Plaintiffs' hostile work environment claims through the lens of *Muldrow*.

**B.  Tenth Circuit precedent aligns with the Court's understanding of *Muldrow*.**

Historically, to establish a hostile work environment claim, Plaintiffs must show that Saifan suffered harassment that "was so severe or pervasive that it altered a term, condition, or privilege of his employment and created an abusive environment." *Young v. Colo. Dep't of Corr.*, 94 F.4th 1242, 1249 (10th Cir. 2024); *see also Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (harassment violates Title VII when it is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment") (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 63-69 (1986)). Under *Muldrow*, a plaintiff alleging disparate treatment need only show "some harm" respecting an identifiable term or condition of employment, and she need not show that the harm was "significant," "serious," "substantial," or "any similar adjective suggesting that the disadvantage must exceed a heightened bar." *Muldrow*, 601 U.S. at 354-55. The Court made clear that its decision

3

"change[d] the legal standard used in any circuit that has previously required 'significant,' 'material,' or 'serious' injury," and "[i]t lower[ed] the bar Title VII plaintiffs must meet." *Id*. at 356 n.2; *see also id*. at 353 n.1, 355-56 (expressly abrogating *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 532 (10th Cir. 1998), and *Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 635 (10th Cir. 2012)).

*Muldrow* therefore clarified that discriminatory conduct need only leave a worker "worse off respecting employment terms or conditions." *Muldrow*, 601 U.S. at 355. Applied to hostile work environment claims, that standard would mean that the question "whether a hostile work environment was severe or pervasive enough to violate Title VII" effectively reduces to the question "whether it left an employee 'worse off respecting employment terms or conditions.'" *McNeal*, 117 F.4th at 904 (citation omitted). This understanding of *Muldrow* comports with existing Tenth Circuit precedent. "[T]he law does not require a plaintiff to show that the discriminatorily abusive work environment *seriously* affected her psychological well-being or that it tangibly impaired her work performance." *Davis v. U.S. Postal Serv.*, 142 F.3d 1334, 1341 (10th Cir. 1998) (emphases added) (citations omitted). The relevant inquiry in the hostile work environment context has always been whether the plaintiff's "condition of employment was altered *for the worse* because of . . . harassment." *Ford v. Jackson Nat'l Life Ins. Co.*, 45 F.4th 1202, 1231 (10th Cir. 2022) (emphasis added). That standard is largely consistent with the one the Court applied in this case. Doc. 158 at 14 (asking whether Saifan "suffered some harm or some disadvantageous change with respect to an identifiable term or condition of her employment on account of a hostile work environment").

Notably, before *Muldrow*, some district courts within the Tenth Circuit had mistakenly imported the "significant" standard for disparate treatment claims into the hostile work

4

environment context, requiring plaintiffs to show that the harassment they suffered had the cumulative effect of "*significantly* alter[ing]" their working conditions. *Ewing v. Doubletree DTWC LLC*, No. 2:14-cv-00526, 2016 WL 750653, at *5 (D. Utah Feb. 24, 2016) (emphasis added), *aff'd*, 673 F. App'x 808 (10th Cir. 2016); *see also Garcia v. Cargill, Inc.*, No. 08-cv-4153, 2010 WL 4160118, at *13 (D. Kan. Apr. 21, 2010) (requiring harassment "to have *significantly* altered the plaintiff's work environment") (emphasis added); *Andreas v. Nw. Mut. Life Ins. Co./Nw. Mut.*, No. 07-cv-00312, 2009 WL 10666049, at *5 (D.N.M. Mar. 5, 2009) (same), *order amended and superseded on other grounds*, 2009 WL 10708296 (D.N.M. Mar. 25, 2009). That line of cases cannot survive *Muldrow* for the reasons set forth above. While the Court was not wrong to "view[] plaintiffs' hostile work environment claim through the lens of *Muldrow*," Doc. 158 at 14, that lens does not reveal a new standard but instead merely brings the preexisting standard more sharply into focus. The Court therefore did not clearly err, and reconsideration should be denied.

**II.     The Court properly denied summary judgment on Plaintiffs' hostile work environment claim.**

Chipotle reargues Garcia's harassment was not based on Saifan's religion and Plaintiffs' hostile work environment claim does not meet the severe or pervasive threshold. Doc. 163 at 10. The company is merely rehashing its summary judgment arguments the Court properly rejected.

First, Plaintiffs "easily demonstrated a genuine issue of material fact whether Garcia's harassment was based on Saifan's religion." Doc. 158 at 15. Garcia asked to see Saifan's hair, which her hijab covered; she told Garcia she wore her hijab because of her religion; the hijab can be understood "as an essential expression of [devout Muslims'] commitment to living a godly and pious life[;]" and Garcia similarly targeted another female Muslim employee who wears a hijab. *Id.* (quoting Expert Report of Homayra Ziad, Doc. 131-13 at 3); Doc. 130 at 21-22. Thus,

5

"Saifan wears her hijab because of her religion, and Garcia's harassment stemmed from and centered around her hijab." Doc. 158 at 16.

Second, Plaintiffs "presented evidence that [Saifan] found Garcia's conduct extremely offensively and humiliating, and she felt uncomfortable and scared in her workplace—so much so that she also filed a police report based on the events." Doc. 158 at 17. The harassment occurred in the context of Saifan's deeply held religious beliefs requiring modesty, she experienced extreme emotional distress, and she filed a police report regarding Garcia's attack. Doc. 158 at 16; Doc. 130 at 23-24.

Third, Plaintiffs presented evidence Garcia's harassment was objectively severe or pervasive. "The involuntary removal of a hijab is objectively offensive—the act 'is comparable to pulling off someone's clothing to see their breasts or genitals.'" Doc. 158 at 3, quoting Expert Report of Homayra Ziad (Doc. #131-13 at 3). Garcia asked to see Saifan's hair ten to fifteen times on at least two to three separate occasions despite Saifan's objections and explanations of her hijab's religious significance; Garcia pulled her hijab, partially revealing her hair; and she resigned because of Garcia's actions. Doc. 158 at 16; Doc. 130 at 24-28.

Even if *Muldrow* lowered the standard for harassment, Plaintiffs met the more demanding severe or pervasive standard. While Chipotle may disagree, the Court did not clearly err in denying summary judgment. The company's motion to reconsider is not a vehicle to rehash the same unavailing arguments. *Cline,* 370 F. Supp. 2d at 1132 (internal citation omitted).

### III. The Court properly denied summary judgment on Plaintiffs' constructive discharge claim.

Chipotle accuses the Court of clear error because it was not persuaded by the company's arguments regarding Plaintiffs' constructive discharge claim. Chipotle is merely restating arguments that failed on summary judgment.

### A. The Court did not apply a lowered standard to the constructive discharge claim.

Chipotle assumes the Court viewed Plaintiffs' constructive discharge claim through the lens of *Muldrow*. Doc. 163 at 10, n.7. But the Court did not mention *Muldrow* in its constructive discharge analysis, which centered on whether a reasonable fact finder could conclude that working conditions were so intolerable Saifan had no choice but to quit. *See* Doc. 158 at 19-20. The Court thus applied the proper standard and did not clearly err.

### B. The Court properly found a genuine issue of material question of fact regarding Saifan's intolerable working conditions.

Chipotle takes the opposite position from the one it asserted on summary judgment. Despite previously asking the Court to consider Saifan's subjective perception in evaluating Plaintiffs' constructive discharge claim, the company now argues it would be error for the Court to do so. *Cf.* Doc. 113 at 28 *with* Doc. 163 at 11. But the Court did not consider Saifan's subjective perception in its ruling. It reviewed the evidence under the reasonableness standard. Doc. 158 at 19-20. This is the correct analysis that courts have routinely applied. *See Sholl v. Plattform Advert., Inc.*, 438 F. Supp. 2d 1303, 1313-14 (D. Kan. 2006); *Lockheed Martin Corp. v. Admin. Rev. Bd., U.S. Dep't of Lab.*, 717 F.3d 1121, 1133-36 (10th Cir. 2013).

Chipotle then reiterates its belief that Saifan's working conditions were not intolerable, relying exclusively on its summary judgment briefing. Doc. 163 at 12. But the Court properly disagreed, holding that a reasonable fact finder could find intolerable working conditions. Doc. 158 at 19-20. There is no clear error for the Court to correct, and Chipotle's dissatisfaction with the ruling is not grounds for reconsideration. *See* D. Kan. Rule 7.3; *see also Ledbetter v. Wal-Mart Stores, Inc.*, No. 06-CV-01928-WYD-MJW, 2009 WL 997338, at *2 (D. Colo. Apr. 14,

2009) ("Defendant asserts its dissatisfaction with [the court's] ruling . . . Defendant's disappointment in [the] ruling does not provide a basis for reconsideration.").

### C. The Court considered whether Chipotle had a reasonable opportunity to correct harassment and properly denied summary judgment.

Chipotle repeats its previous argument that Plaintiffs' constructive discharge claim must fail as a matter of law because the company purportedly did not have a reasonable opportunity to correct Garcia's harassment. But the Court did not fail to consider whether Saifan provided Chipotle a reasonable chance to correct the harassment. It reasoned that "reasonableness" is a fact-intensive inquiry "typically reserved for the jury[,]" and that Plaintiffs had demonstrated a genuine issue of material fact whether Saifan's resignation was involuntary. Doc. 158 at 20. Chipotle continues to argue Saifan was required to wait for the company to conclude its investigation. But, as the Court recognized, the law does not impose the requirement. *See Rush v. Speedway Buick Pontiac GMC, Inc.*, 525 F. Supp. 2d 1265, 1277-79 (D. Kan. 2007); *see also O'Shea v. Yellow Tech. Servs., Inc.*, No. CIV. A. 96-2370-GTV, 2000 WL 1309290, at *3 (D. Kan. Aug. 25, 2000) (internal citations omitted) ("In the context of Plaintiff's ongoing complaints, a reasonable trier of fact could find that the events would lead a reasonable person to conclude "that [he or she] had no other choice but to quit."); *Sholl*, 438 F. Supp. 2d at 1313-14; Doc. 158 at 20 ("Title VII does not require that an employee submit to intolerable working conditions while defendant investigates.").

The Court did not clearly err. It properly declined to grant summary judgment on Chipotle's arguments and should decline to reconsider them. *See Reed Auto of Overland Park, LLC v. Landers McLarty Olathe KS, LLC*, No. 2:19-CV-02510-HLT, 2021 WL 2711153, at *2 (D. Kan. July 1, 2021) ("The Court will not reconsider its prior order based only on a rehashing of the same arguments.") (internal citation omitted).

### III. The Court correctly found Chipotle was not entitled to summary judgment on its *Faragher/Ellerth* defense.

The Court correctly held Chipotle is not entitled to summary judgment on the *Faragher/Ellerth* defense. Plaintiffs demonstrated genuine issues of material fact on both prongs of the defense. First, Plaintiffs presented sufficient evidence the company did not exercise reasonable care to prevent and promptly correct Garcia's harassment—it allowed his harassment to continue despite Saifan's complaints to Service Manager Kimberly Benavente-Fernandez and inadequately investigated the attack. Doc. 130 at 29-30. Second, there is evidence Saifan did not unreasonably fail to take advantage of preventative or corrective opportunities or failed to avoid harm otherwise. She complained to Benavente-Fernandez before Garcia's attack and immediately reported Garcia to General Manager Javier 'Gio' Salcedo and Field Leader David Clark when his harassment escalated from verbal to physical. Doc. 130 at 30-31. She also sought help from corporate human resources. *Id*. at 31. On these facts, Chipotle is not entitled to summary judgment.

Chipotle appears to believe the Court's Order precludes it from asserting a *Faragher/Ellerth* defense at trial. Doc. 163 at 15 (Chipotle "requests that the Court reconsider the availability of the *Faragher/Ellerth* defense in this matter."). But Plaintiffs understand the Court's ruling to leave the defense available for the company to prove at trial—Chipotle simply has not established it as a matter of law. Moreover, Chipotle's assertion that a constructive discharge "does not" constitute a tangible employment action precluding the *Faragher/Ellerth* defense is incorrect. Doc. 163 at 13. To be sure, a plaintiff's decision to quit her job "can qualify as a tangible employment action— subjecting the employer to strict liability—in some situations." *Russell v. Wormuth*, No. 22-4035-DDC, 2024 WL 4707958, at *9, n.6 (D. Kan. Nov. 7, 2024) (citing *Pennsylvania State Police v. Suders*, 542 U.S. 129, 134 (2004)). But, when "an

9

official act does not underlie the constructive discharge, the employer may invoke the *Ellerth*/*Faragher* affirmative defense." *Chapman v. Carmike Cinemas*, 307 F. App'x 164, 169 (10th Cir. 2009) (citing *Penn. State Police*, 542 U.S. at 148). An official act refers to the "means by which the supervisor brings the official power of the enterprise to bear on subordinates." *Penn. State Police*, 542 U.S. at 144.

Here, Plaintiffs do not allege an official act precipitated Saifan's constructive discharge. But Chipotle cannot prove either prong of its defense as a matter of law, and the Court correctly denied summary judgment.

## Conclusion

Chipotle cannot merely rehash its summary judgment briefing for reconsideration. The company cannot demonstrate an intervening change in law warranting reconsideration. And the Court did not clearly err in evaluating Plaintiffs' hostile work environment claim through the lens of *Muldrow*. The Court also did not clearly err in denying summary judgment on Plaintiffs' constructive discharge claim. Should the Court reconsider Defendant's *Faragher/Ellerth* defense to Plaintiffs' hostile work environment claim, it should uphold its denial of summary judgment.

Respectfully submitted,

s/ Lauren M. Wilson
Lauren M. Wilson, FL Bar 1024850
Trial Attorney
Joshua M. Pierson, KS Bar 29095
Supervisory Trial Attorney
U.S. Equal Employment Opportunity Commission
Kansas City Area Office
400 State Ave., Ste. 905
Kansas City, KS 66101
(913) 359-1812
lauren.wilson@eeoc.gov
joshua.pierson@eeoc.gov

Joshua Stockton, OBA 21833  
Trial Attorney  
U.S. Equal Employment Opportunity Commission  
Oklahoma City Area Office  
215 Dean A. McGee Ave., Ste. 524  
Oklahoma City, OK 73102  
(405) 666-0387  
joshua.stockton@eeoc.gov  

*Attorneys for Plaintiff EEOC*

<u>s/ Amy L. Coopman (with consent)</u>  
Amy L. Coopman, KS Bar 17314  
Bridge Mediation, LLC  
PO Box 3523  
Shawnee, KS 66203  
(816) 260-5635  
amy@bridgemediationkc.com  

*Attorney for Plaintiff-Intervenor*

## CERTIFICATE OF SERVICE

I hereby certify that on January 14, 2025, I filed this document with the Clerk of Court using the Court's Electronic Case Filing system, which will automatically send notice of this filing to all counsel of record.

<u>*s/ Lauren M. Wilson*</u>  
Lauren M. Wilson
