## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION |
| and | ) ) | No. 23-2439-KHV |
| AREEJ SAIFAN, | ) ) | |
| Intervenor Plaintiff, | ) ) | |
| v. | ) ) | |
| CHIPOTLE SERVICES, LLC, | ) ) | |
| Defendant. | ) ) ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant's Motion For Certification For Immediate Appeal Under 28 U.S.C. § 1292(b) (Doc. #162) and Defendant's Motion For Partial Reconsideration Of The Court's Order Denying Defendant's Motion For Summary Judgment (Doc. #163), both filed December 17, 2024. For reasons stated below, the Court overrules defendant's motions.

### Factual And Procedural Background

The factual background underlying the parties' dispute is set forth in detail in the Court's Memorandum And Order (Doc. #158) filed December 3, 2024.

Highly summarized, Areej Saifan, a Muslim woman, worked as a part time crew member at a Chipotle location in Lenexa, Kansas. At the Lenexa location, defendant also employed Kevin Silva Garcia as an apprentice—an employee training to become a general manager. On two or three occasions in July of 2021, Garcia asked to see Saifan's hair, which her hijab covered. Garcia

asked ten to 15 times per occasion.  Saifan refused, asked him to stop asking and on at least one occasion, explained the religious significance of her hijab.  On August 9, 2021, Garcia pulled on Saifan's hijab, pulling it off halfway.  Saifan's hair was visible through a sheer layer of fabric which remained on her head.  Later that night, she reported the incident to her general manager and field leader.  The next day, August 10, Saifan resigned, identifying August 24 as her last day with defendant.  Saifan worked her scheduled shifts on August 13, 14 and 15.  After August 15, defendant did not schedule her for additional shifts.

On September 27, 2023, the United States Equal Employment Opportunity Commission ("EEOC") filed suit against defendant.  On November 29, 2023, under Rule 24(a) of the Federal Rules of Civil Procedure and 42 U.S.C. § 2000e-5(f)(1), Saifan intervened.  Together, plaintiffs assert that in violation of Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e et seq., defendant (1) subjected Saifan to unlawful religious harassment, (2) constructively discharged her and (3) retaliated against her for reporting religious harassment.  Pretrial Order (Doc. #109) filed July 31, 2024 at 10.

On December 3, 2024, the Court overruled defendant's motion for summary judgment on plaintiffs' three Title VII claims.  See Memorandum And Order (Doc. #158).  In that same order, the Court sustained plaintiffs' motion for summary judgment on three of defendant's affirmative defenses—failure to conciliate, statute of limitations and the after-acquired evidence defense—and on the issue of whether Garcia was a supervisor under Title VII.  See id.

On December 17, 2024, defendant filed two motions, asking the Court to (1) reconsider its order on defendant's summary judgment motion and (2) certify an interlocutory appeal pursuant to 28 U.S.C. § 1292(b).  See Defendant's Motion For Certification For Immediate Appeal (Doc. #162); Defendant's Motion For Partial Reconsideration (Doc. #163).

<u>**Analysis**</u>

**I.     Motion For Partial Reconsideration**

Defendant seeks partial reconsideration of the Court's <u>Memorandum And Order</u> (Doc. #158), which overruled defendant's motion for summary judgment on plaintiffs' three Title VII claims. Specifically, defendant asks that the Court reconsider its rulings that (1) <u>Muldrow v. City of St. Louis, Mo.</u>, 601 U.S. 346 (2024), altered the "severe or pervasive" standard for hostile work environment claims and the "intolerable working conditions" standard for constructive discharge claims; (2) constructive discharge can serve as a tangible employment action for purposes of defendant's <u>Faragher-Ellerth</u>[1] defense; and (3) plaintiffs presented sufficient evidence to create a genuine issue of material fact on their hostile work environment and constructive discharge claims. Defendant does not challenge any ruling related to plaintiffs' retaliation claim.

District of Kansas Local Rule 7.3 governs motions for reconsideration of dispositive orders which do not result in a final judgment. <u>Neonatal Prod. Grp., Inc. v. Shields</u>, 312 F. Supp. 3d 1010, 1020 (D. Kan. 2018). Under Rule 7.3, a party may seek reconsideration on the following grounds: (1) an intervening change in the controlling law, (2) the availability of new evidence or (3) the need to correct clear error or prevent manifest injustice. D. Kan. Rule 7.3. As movant, defendant bears the burden to show adequate reason for the Court to reconsider its prior order. <u>Koch v. Shell Oil Co.</u>, 8 F. Supp. 2d 1259, 1263 (D. Kan. 1998).

Defendant argues that the Court should reconsider its order based on an intervening change in the controlling law and the need to correct clear error or prevent manifest injustice. A change in the controlling law is "intervening" when the change occurs *after* the Court enters its order on

---

[1]     <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775 (1998); <u>Burlington Indus., Inc. v. Ellerth</u>, 524 U.S. 742 (1998).

a motion. See Kirby v. OCWEN Loan Servicing, LLC, 641 F. App'x 808, 812 (10th Cir. 2016) (change in controlling law was intervening when between court's dismissal and filing of second suit). Here, defendant has not cited binding authority entered after the Court issued its Memorandum And Order (Doc. #158) on December 3, 2024.[2]  Accordingly, the Court overrules defendant's motion for reconsideration based on an intervening change in the controlling law.

"Clear error" exists when the district court's decision was "arbitrary, capricious, whimsical, or manifestly unreasonable." Wright ex rel. Tr. Co. of Kan. v. Abbott Lab'ys, Inc., 259 F.3d 1226, 1235–36 (10th Cir. 2001). The Tenth Circuit has not defined "manifest injustice" in the context of reconsideration, but this Court has described the term to mean direct, obvious and observable error. Hadley v. Hays Med. Ctr., No. 14-1055-KHV, 2017 WL 748129, at *2 (D. Kan. Feb. 27, 2017). Where defendant seeks reconsideration to prevent manifest injustice, it can prevail only if it demonstrates injustice that is "indisputable." Tri-State Truck Ins., Ltd. v. First Nat'l Bank of Wamego, No. 09-4158-SAC, 2011 WL 4691933, at *3 (D. Kan. Oct. 6, 2011) (quoting Shirlington Limousine & Transp., Inc. v. United States, 78 Fed. Cl. 27, 31 (2007)).

A motion for reconsideration is not a vehicle for a losing party to revisit issues already addressed. Servants of Paraclete v. Does, 204 F.3d 1005, 1012 (10th Cir. 2000). Absent extraordinary circumstances, arguments that defendant could have raised in its original summary judgment briefing—and did not—may not be made in a motion for reconsideration. Id. Because the conditions that justify granting a motion to reconsider are rarely present, such motions are

---

[2]    Defendant argues that Iweha v. Kansas, 121 F.4th 1208 (10th Cir. 2024), which the Tenth Circuit decided on November 19, 2024 (after the close of summary judgment briefing), is intervening. Cases that were decided *before* the Court's order, however, are not intervening and thus do not require reconsideration. Even if the Tenth Circuit had decided Iweha after December 3, 2024, Iweha does not address the scope of Muldrow as to Title VII disparate treatment claims.

disfavored and should be equally rare.  Brumark Corp. v. Samson Resources Corp., 57 F.3d 941,

944 (10th Cir. 1995) (motion for reconsideration is extreme remedy granted in rare circumstances).

With that in mind, the Court turns to defendant's motion.

At its core, defendant's motion for reconsideration is simply a rehash of arguments that it

made or could have made on summary judgment.  For reasons set forth below, defendant has not

met its burden of showing adequate grounds for reconsideration.  The Court therefore overrules

defendant's motion.

A.    Whether The Court Committed Clear Error Interpreting Muldrow And Viewing
      Plaintiffs' Hostile Work Environment Claim Through The Lens Of Muldrow

Defendant argues that the Court must reconsider its Memorandum And Order (Doc. #158)

because it committed clear error in finding that Muldrow altered the "severe or pervasive" standard

for hostile work environment claims and the "intolerable working conditions" standard for

constructive discharge claims.

First, defendant misunderstands the Court's order on plaintiffs' constructive discharge

claim.  The Court did not hold that Muldrow altered the "intolerable working conditions" standard.

It did not cite, mention or discuss Muldrow in its analysis of that claim.  Defendant admits that

"the Court did not expressly apply Muldrow when analyzing constructive discharge," but argues

that the Court's "description of Muldrow's application indicates that it influenced the Court's

analysis."  Motion For Reconsideration (Doc. #163) at 10.  These fears are speculative and

inaccurate and do not warrant reconsideration.

Second, as to plaintiffs' hostile work environment claim, defendant has not shown that the

Court committed clear error.  In April of 2024, the Supreme Court seemingly altered the Title VII

landscape in holding that when plaintiffs bring suit under Title VII's discrimination prong, they

need not show that harm was "significant" or "any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar." <u>Muldrow</u>, 601 U.S. at 355. Instead, plaintiffs need only show "some harm" or "some disadvantageous change" with respect to an identifiable term or condition of employment. <u>Id.</u> at 354–55. Defendant filed its motion for summary judgment four months after the Supreme Court decided <u>Muldrow</u>, but did not address <u>Muldrow</u>'s impact on plaintiffs' hostile work environment claim. Defendant had ample opportunity to share its views on <u>Muldrow</u> and its impact on this case during summary judgment briefing. It chose not to do so. On this ground alone, the Court overrules defendant's motion for reconsideration.

On the merits, defendant argues that the Court erroneously imported a lowered standard in place of the "severe or pervasive" inquiry, contravening decades of Tenth Circuit and Supreme Court precedent. Specifically, defendant argues that <u>Muldrow</u> applies only to disparate treatment claims, that the Tenth Circuit and numerous other courts agree that <u>Muldrow</u> applies only to disparate treatment claims and that this Court erred in concluding otherwise. Plaintiffs respond that <u>Muldrow</u> clarified, rather than altered, the standard for hostile work environment claims. Plaintiffs assert that (1) <u>Muldrow</u>'s text-based reasoning applies with equal force to hostile work environment claims, which derive from the same statutory text that the Supreme Court considered in <u>Muldrow</u> and (2) <u>Muldrow</u> is consistent with Tenth Circuit precedent.

Absent Tenth Circuit direct guidance, defendant has not shown that the Court committed clear error in viewing plaintiffs' hostile work environment claim through the lens of <u>Muldrow</u>— especially when defendant totally failed to address the issue in its summary judgment briefing. Defendant has not shown that the Court's interpretation was arbitrary, capricious, whimsical or

manifestly unreasonable and therefore the Court overrules defendant's motion for reconsideration on plaintiffs' hostile work environment claim.

Finally, defendant has not shown that even under the "severe or pervasive" standard, it was entitled to summary judgment. This circuit and others have found that when sufficiently severe, a single act can constitute a hostile work environment. See Turnbull v. Topeka State Hospital, 255 F.3d 1238, 1243 (10th Cir. 2001) (though one incident, sexual assault was objectively abusive, dangerous and humiliating to create sexually hostile work environment); Ayissi-Etoh v. Fannie Mae, 712 F.3d 572, 577 (D.C. Cir. 2013) ("This single incident [of using the "n-word"] might well have been sufficient to establish a hostile work environment."); Adams v. Austal, U.S.A., LLC, 754 F.3d 1240, 1254 (11th Cir. 2014) (although racially offensive carving on workplace wall was isolated act, it was severe enough that reasonable jury could find work environment objectively hostile). Defendant has not met its burden of showing adequate reason for the Court to reconsider its prior order or that even if the Court did reconsider its order, that it should reach a different conclusion.

B.    Whether The Court Committed Clear Error In Overruling Defendant's Motion For Summary Judgment On The Faragher-Ellerth Defense

On summary judgment, defendant argued that even if plaintiffs could demonstrate a hostile work environment, it was entitled to summary judgment under Faragher-Ellerth. Under this defense, an employer may escape vicarious liability for the harassing acts of its supervisory employees if it proves a two-pronged affirmative defense: (1) it "exercised reasonable care to prevent and correct promptly any [] harassing behavior" and (2) Saifan "unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Faragher, 524 U.S. at 807; Ellerth, 524 U.S. at 765. The Court found genuine

issues of material fact whether defendant constructively terminated Saifan's employment, so for purposes of the <u>Faragher-Ellerth</u> defense, whether defendant took tangible employment action against her.

Defendant argues that the Court committed clear error in so finding. Specifically, defendant asserts that as a matter of law under <u>Pennsylvania State Police v. Suders</u>, 542 U.S. 129 (2004), constructive discharge based on the harassing conduct of a supervisor cannot constitute tangible employment action which would preclude defendant from asserting the <u>Faragher-Ellerth</u> defense. Defendant mischaracterizes <u>Suders</u>. More importantly, however, defendant had every opportunity to raise this argument on summary judgment and never did so. Defendant did not cite <u>Suders</u>, let alone argue that as a matter of law, constructive discharge based on harassment by a supervisor cannot be a tangible employment action. One time in a footnote, defendant mentioned constructive discharge, summarily asserting that Saifan was not constructively discharged. Again, defendant is raising arguments that it could have raised in summary judgment briefing and chose not to. For this reason, the Court overrules defendant's motion for reconsideration on the issue.[3]

C.    <u>Whether The Court Committed Clear Error In Finding That A Reasonable Time To Take Corrective Action Could Be No Time At All</u>

Defendant argues that the Court committed clear error in finding that genuine issues of material fact existed whether Saifan gave defendant a reasonable time to take corrective action before resigning. As the Court noted in its order, "reasonableness" is a fact-intensive inquiry which is typically reserved for the jury. Defendant attempts to rehash its argument on summary

---

[3]    Defendant asks that the Court reconsider "the availability" of the defense at trial. Defendant again misunderstands the Court's ruling. The Court never held that defendant could not assert the defense. The defense is still available for defendant to raise and establish at trial, should it choose to do so. The Court merely found that defendant was not entitled to judgment as a matter of law on that defense.

judgment that Saifan did not allow it a reasonable time to investigate before resigning. The Court repeats, however, a motion to reconsider is not a second opportunity for defendant to argue its motion for summary judgment. While defendant may disagree with the Court's findings, it has not shown that the Court committed clear error in so finding. Accordingly, the Court overrules defendant's motion for reconsideration on this issue.

D.    Whether The Court Committed Clear Error In Finding That Genuine Issues Of Material Fact Precluded Summary Judgment

Finally, defendant argues that the Court committed clear error in finding that plaintiffs had created a genuine issue of material fact on their hostile work environment and constructive discharge claims. Specifically, defendant asserts that (1) to survive summary judgment, plaintiffs had to provide sufficient evidence of "severe or pervasive" harassment, not merely "some" harassment, and they did not do so and (2) in considering whether working conditions were so intolerable that Saifan had no choice but to quit, the Court only considered her subjective feelings.

As to the former, the Court is perplexed by defendant's statement: Muldrow's "some" requirement applies to the level of harm, not the quantity of harassment. The Court viewed plaintiffs' hostile work environment claim through the lens of Muldrow and asked whether plaintiffs could establish that Saifan suffered some harm or some disadvantageous change with respect to an identifiable term or condition of her employment on account of a hostile work environment. The Court did not ask whether plaintiffs could establish "some" harassment. Accordingly, beyond defendant's original disagreement with the Court's view of Muldrow, the Court is unclear what exactly defendant asserts was an error. To the extent defendant asserts that the Court erred in considering the evidence on summary judgment and applying Muldrow to the evidence, it has not shown clear error. In its Memorandum And Order (Doc. #158) the Court

reviewed plaintiffs' proffered evidence at length, finding genuine issues of material fact whether Saifan suffered some harm or disadvantageous change. Even if the Court takes <u>Muldrow</u> out of the equation, as already stated, it would have reached the same conclusion from the summary judgment record as to plaintiffs' hostile work environment claim.

As to defendant's latter argument, the Court did note that Saifan felt uncomfortable and scared in the workplace, but it did not rely on that sentiment alone. The Court viewed the evidence under an objective standard and in viewing all of the evidence in the light most favorable to plaintiffs, found genuine issue of material fact whether Saifan's resignation was voluntary. The Court overrules defendant's motion for reconsideration on this issue.

Defendant is rehashing the evidence and inventing new arguments which are improper on a motion for reconsideration. Defendant has not met its burden of showing that the Court's decision to overrule defendant's motion for summary judgment based on genuine issues of material fact was arbitrary, capricious, whimsical or manifestly unreasonable. Accordingly, the Court overrules defendant's motion for reconsideration in its entirety.

## II. Motion For Certification For Immediate Appeal

If the Court overrules its motion for reconsideration, defendant requests that the Court certify its <u>Memorandum And Order</u> (Doc. #158) for immediate appeal under 28 U.S.C. § 1292(b) on the following question:

> Whether <u>Muldrow v. City of St. Louis, Mo.</u>, 601 U.S. 346 (2024) altered the applicable legal standards for hostile work environment or constructive discharge claims under Title VII of the Civil Rights Act of 1964—specifically, the standard that harassment allegations must be "severe or pervasive" to constitute a hostile work environment, and the "objectively intolerable working conditions" standard for constructive discharge—by its holding that a plaintiff must show only "some harm" or "some disadvantageous change" to the terms, conditions, or privileges of employment to support a disparate treatment discrimination claim under Title VII.

Defendant's Motion For Certification (Doc. #162) at 1.  For reasons set forth below, the Court overrules defendant's motion.[4]

The court of appeals may hear appeals from all final decisions of the district courts of the United States and certain interlocutory orders involving injunctions, appointing receivers and determining rights in admiralty cases.  See 28 U.S.C. § 1291; 28 U.S.C. § 1292(a).  With regard to other interlocutory orders, a district judge may certify an interlocutory order when she is of the opinion that (1) such order involves a controlling question of law, (2) an immediate appeal from the order may materially advance the ultimate termination of the litigation and (3) a substantial ground for difference of opinion exists with respect to the question of law.  See 28 U.S.C. § 1292(b).  "The proponent of an interlocutory appeal bears the burden of establishing that all three of the substantive criteria are met."  Freedom Transp., Inc. v. Navistar Int'l Corp., No. 18-CV-2602-JAR, 2020 WL 108670, at *2 (D. Kan. Jan. 9, 2020).

The Court retains discretion to certify an interlocutory order for appeal under Section 1292(b).  See Swint v. Chambers Cty. Comm'n, 514 U.S. 35, 47 (1995).  Certification is "limited to extraordinary cases in which extended and expensive proceedings probably can be avoided by immediate and final decision of controlling questions encountered early in the action." State of Utah ex rel. Utah State Dep't of Health v. Kennecott Corp., 14 F.3d 1489, 1495 (10th Cir. 1994).  "[I]nterlocutory appeals are not appropriate to merely provide review of difficult rulings in hard cases."  Kammerer v. Univ. of Kansas, No. 24-CV-2182-JAR, 2024 WL 5135969, at *2 (D. Kan. Dec. 17, 2024) (internal quotations omitted).

_____

[4]    As already discussed, the Court did not hold that Muldrow altered the standard for constructive discharge claims.  Accordingly, the Court overrules defendant's request to certify that issue for immediate appeal.

A.      Controlling Question Of Law

"Question of law" refers to a "question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine." Ahrenholz v. Bd. of Trustees of Univ. of Ill., 219 F.3d 674, 676 (7th Cir. 2000) (Posner, J.).  That question of law is controlling "if resolution of the issue on appeal could materially affect the outcome of litigation in the district court" or where "its incorrect disposition would require reversal of a final judgment."  City of Neodesha v. BP Corp. N. Am. Inc., No. 15-CV-4025-KHV, 2016 WL 3522092, at *3 (D. Kan. June 28, 2016); Park v. Trican Well Serv., L.P., No. CIV-15-515-R, 2015 WL 6160272, at *2 (W.D. Okla. Oct. 20, 2015). A party presents a controlling issue of law when it claims that the Court articulated the legal standard incorrectly.  Steering Committee v. United States, 6 F.3d 572, 575 (9th Cir. 1993).

Defendant argues that the Court should certify its Memorandum And Order (Doc. #158) for immediate appeal because the scope of Muldrow is a controlling question of law.  Specifically, defendant asserts that if the Court had applied the "severe or pervasive" standard to plaintiffs' hostile work environment claim, the Court would have granted defendant's motion, so the question materially affects the outcome of the litigation.  Defendant also argues that should the Court charge the jury with the incorrect standard, defendant would be required to appeal, the Tenth Circuit would necessarily have to reverse any judgment and the parties would have to retry the case.[5] Plaintiffs respond that resolution on appeal would not materially affect the outcome of litigation in the district court because (1) even if Muldrow did not apply to plaintiffs' hostile work environment claim, the decision would not dispose of plaintiffs' claim because the Court would

---

[5]      These arguments would equally apply to the grant or denial of any summary judgment ruling on any issue.

need to analyze it under the proper standard and (2) interlocutory review would not definitively decide the claims for trial.

The scope of Muldrow raises a controlling question of law which could materially affect the disposition of plaintiffs' hostile work environment claim at the district court level. Moreover, application of an incorrect legal standard might require reversal of a final judgment, depending on a verdict returned by the jury. Accordingly, this issue could be a controlling issue of law on one of plaintiffs' three Title VII claims.

### B.    Materially Advance The Ultimate Termination Of The Litigation

"A primary purpose of § 1292(b) is to provide an opportunity to review an order when an immediate appeal would materially advance the ultimate termination of the litigation." State of Utah By & Through Utah State Dep't of Health v. Kennecott Corp., 14 F.3d 1489, 1495 (10th Cir. 1994) (internal quotations omitted). Defendant can meet this element by showing that an immediate appeal:

> [W]ould eliminate the need for a trial, eliminate complex issues so as to simplify the trial, or make discovery easier and less costly. If the litigation will be conducted in substantially the same manner regardless of the decision, an immediate appeal will not advance the termination of the litigation. This element turns on pragmatic considerations, assessed by reviewing the procedural and substantive status of the case, the extent of the parties' preparation for trial, and the nature and scope of the requested relief.

Raymond v. Spirit Aerosystems Holdings, Inc., No. 16-1282-JWB, 2019 WL 1922170, at *2 (D. Kan. Apr. 30, 2019) (internal citations omitted). This case is specially set for trial on April 14, 2025. An interlocutory appeal would clearly make that trial date impossible, and it would not eliminate the need for trial. Where an interlocutory appeal will delay a trial—rather than expedite or eliminate it—the Court should not certify an immediate appeal. Kliban v. United States, 65 F.R.D. 6, 10 (D. Conn. 1974). Accordingly, certification is inappropriate where all substantive

-13-

motions have been decided, discovery is completed and the case is ready for trial.  Keller v. Bd. of Educ. of City of Albuquerque, New Mexico, No. CV-00-1667 MV/LFG, 2002 WL 35650124, at *2 (D.N.M. Jan. 28, 2002) (citing Rottmund v. Continental Assurance Co., 813 F. Supp. 1104, 1112 (E.D. Pa. 1992)).

Apparently assuming that it would prevail on interlocutory appeal, defendant argues that an immediate appeal would materially advance the litigation.  Specifically, defendant asserts that (1)  reversal would eliminate all but plaintiffs' retaliation claim; (2) with only one claim remaining, the parties would only need to present witnesses for the one claim, significantly shortening trial; (3) if the Tenth Circuit used an expedited briefing schedule, it could render a decision in the nine weeks before trial; and (4) if the Court does not certify the order for immediate appeal, the parties will have to go through trial, appeal and retry the case after reversal, which will delay resolution of this matter for years.  Plaintiffs respond that (1) even if Muldrow did not apply to plaintiffs' hostile work environment claim, the case would still proceed to trial with the claim and interlocutory review would not definitively decide the claims for trial; (2) because discovery is complete, the Court has decided the dispositive motions and the case is set for trial in April, an interlocutory appeal would delay the case's termination; and (3) an interlocutory appeal would protract and increase the costs of litigation.

The Court agrees with plaintiffs—an interlocutory appeal will not materially advance the ultimate termination of the litigation.  Defendant has not shown that plaintiffs' hostile work environment claim would not succeed under the "severe or pervasive" standard, or that the Court would have ruled differently on summary judgment under that standard.  Accordingly, defendant has not shown that a decision by the Tenth Circuit would dispose of or even affect plaintiffs' claims for trial or the outcome of this litigation. This case would likely proceed in substantially the same

-14-

manner regardless of a decision by the Tenth Circuit. Even if the Tenth Circuit accepted the interlocutory appeal, a decision before April 14 is unlikely. Discovery is complete and no dispositive motions are pending. The parties have been preparing for trial, and an interlocutory appeal would delay, rather than expedite or fully eliminate, trial. For these reasons, defendant has not shown that this element is met, and the Court need not consider whether substantial grounds for difference of opinion exist. See Ahrenholz, 219 F.3d at 676 ("The criteria are conjunctive, not disjunctive."). The Court overrules defendant's motion for certification for immediate appeal.

**IT IS THEREFORE ORDERED** that Defendant's Motion For Certification For Immediate Appeal Under 28 U.S.C. § 1292(b) (Doc. #162) and Defendant's Motion For Partial Reconsideration Of The Court's Order Denying Defendant's Motion For Summary Judgment (Doc. #163), both filed December 17, 2024 are **OVERRULED. Jury Trial remains set for April 14, 2025 at 9:00 AM in Kansas City Courtroom 440 (JWL/KHV) before District Judge Kathryn H. Vratil.**

Dated this 10th day of February, 2025 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge